# IN UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AUDREY L. SEWELL<br>1301 7th Street, N.W.<br>Apartment 315<br>Washington, D.C. 20001 | )<br>)<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | Civil Action No. |
| ELAINE L. CHAO,<br>SECRETARY OF LABOR<br>THE UNITED STATES OF AMERICA<br>200 Constitution Avenue, N.W.<br>Washington, D.C. 20210 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | )<br>) | |
| Serve: United States Attorney's Office<br>For the District of Columbia<br>555 4th Street, N.W.<br>Washington, D.C.  20001 | )<br>)<br>)<br>)<br>) | |
| Attorney General of the United States<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20530 | )<br>)<br>)<br>) | |
| Elaine. L. Chao<br>200 Constitution Avenue, N.W.<br>Washington, D.C. 20210 | )<br>)<br>)<br>) | |

## **COMPLAINT FOR DISCRIMINATION**

COMES NOW Plaintiff Audrey L. Sewell, by and through undersigned counsel, and states as follows:

1.   Plaintiff brings this action pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 623, for discrimination on the basis of age in her employment and the Privacy Act of 1974,

5 U.S.C. § 552a.

## JURISDICTION AND VENUE

2.  Jurisdiction of this court is founded pursuant to 28 U.S.C. §§ 1331, 1343, 1346 and 5 U.S.C. § 552(g)(1(5).

3.  Venue lies in this Court, pursuant to 28 U.S.C. §§ 1391 and 1402, since the employment practices alleged to be unlawful were committed by defendant and its agents within the District of Columbia and it is a claim against an agency of the United States through its Secretary.

## PARTIES

4.  Plaintiff, Audrey L. Sewell ("Ms. Sewell"), is an adult African-American female, a citizen of the United States and a bona fide resident of the District of Columbia. At all times alleged herein, Ms. Sewell was over forty (40) years old. At all times further relevant herein, Ms. Sewell was an employee of the United States Department of Labor.

5.  The United States Department of Labor ("DOL") is a duly-authorized and organized agency of the United States of America with its headquarters located in Washington, D.C. DOL is subject to the prohibitions against discrimination and the creation and maintenance of a hostile work environment pursuant to the Age Discrimination in Employment Act, as well as the non-disclosure of confidential private employee information pursuant to the Privacy Act of 1974.

## FACTS COMMON TO ALL COUNTS

6.  Audrey L. Sewell had been employed with the United States Department of Labor from about 1972 until June 24, 2005. By 1997, Ms. Sewell was assigned to work at DOL as a financial management specialist in the Employment Standards Administration's ("ESA") Office of Management Administration and Planning ("OMAP"). During the beginning of the time period of

this Complaint, Ms. Sewell had been working in the Office of the Director of the Division of Financial Management ("DFM"), and had risen to the grade level of GS 11. Her duties in that position included the following accounting functions: accounting and reporting on Fair Labor Standards Act ("FLSA") fines and penalties; FLSA debt collection and inter-agency transfers; maintenance of FLSA fund records; Working Capital Fund analysis report, among many other duties.

7. On or around May 2002, while acting as Deputy Director of DFM, Patricia Vastano began making derogatory comments to Ms. Sewell about her age and suggesting that she needed to retire. When Vastano became the acting Director of DFM, and Ms. Sewell's direct supervisor, in July 2002, the verbal abuse continued. In August 2004, Anne Baird-Bridges, the incoming Director of OMAP, became Ms. Sewell's direct supervisor, and Ms. Sewell complained to Baird-Bridges about the verbal abuse by Vastano toward Ms. Sewell. After Ms. Sewell demanded that Vastano cease from making comments about her age, a systematic pattern of harassment began by both Baird-Bridges and Vastano.

8. On December 17, 2004, Ms. Sewell filed a grievance with Local No. 12 of the American Federation of Government Employees against Vastano protesting a letter of reprimand received from Vastano and alleging discrimination and a pattern of harassment toward Ms. Sewell by Vastano.

9. On December 20, 2004, Ms. Sewell filed another union grievance against Baird-Bridges alleging age discrimination.

10. On or about March 14, 2005, Ms. Sewell met with Baird-Bridges to discuss Ms. Sewell's Performance Standards for FY 2005. At that meeting, no standards were discussed.

Instead, Baird-Bridges assigned Ms. Sewell two additional duties, the Agency Detail Funding Report and the Budget Space Rent Report.  Ms. Sewell requested training on the preparation of the reports, and Baird-Bridges instructed Ms. Sewell to seek out the individual who was responsible for the Detail Fund Reports, George Bailey.  Baird-Bridges also informed Ms. Sewell that Vicente Sanabria, a budget analyst who was then assigned the preparation of the Space Rent Report, would train her.  Bailey provided Ms. Sewell with a short training session within a day or two, and Ms. Sewell immediately took over that function.  When Ms. Sewell approached Sanabria that same day concerning the Space Rent Report training, he told her that he had not been advised that the space rent report had been reassigned to Ms. Sewell.

11. Two days later, March 16, 2005, Baird-Bridges, the deciding official for Ms. Sewell's grievance against Vastano, rendered a "step two" decision denying Ms. Sewell's grievance and finding that Ms. Sewell had "failed to demonstrate discrimination or harassment." As of the time of Ms. Sewell's retirement in June 2005, her December 20, 2004, grievance against Baird-Bridges was still pending.

12. On or about March 31, 2005, Baird-Bridges announced the hiring of Kimberly Bassett as a Senior Budget Analyst.  Upon information and belief, Bassett was thirty (30) years old at the time of her hiring.

13. On or about April 8, 2005, Baird-Bridges, in a threatening and intimidating manner yelled and screamed at Ms. Sewell while sticking her hands and fingers within inches of Ms. Sewell's face.  Baird-Bridges' behavior "scared [Ms. Sewell] to death," and she felt humiliated, degraded, intimidated and in fear of her physical safety.  Ms. Sewell did not observe a younger, similarly situated employee, who had apparently engaged in the same procedure for which Baird-

Bridges sought to reprimand Ms. Sewell, spoken to in the same degrading and intimidating manner.

14. As a result of the physical intimidation by Baird-Bridges, Ms. Sewell met with an EEO counselor about Baird-Bridges' conduct on Friday, April 15, 2005, until about 3:00 p.m. Upon information and belief, Baird-Bridges was advised of the filing of Ms. Sewell's meeting with the EEO counselor soon after the Friday meeting concluded. On Sunday, April 17th, Baird-Bridges telephoned Linda Copening, Vice-President of Local 12, and advised her in a voice mail message that Baird-Bridges was scheduling a meeting the next day with Ms. Sewell.

15. When Ms. Sewell arrived at her desk the following Monday morning, April 18, 2005, she discovered an email from Baird-Bridges which had been sent the preceding Sunday. The email directed Ms. Sewell and two of her colleagues, Betty Keller and Vicente Sanabria, to report for a 10:00 meeting that Monday morning. At that meeting, Baird-Bridges' denied Ms. Sewell's request that union representation be present. Baird-Bridges then handed Ms. Sewell a memorandum which informed her that she was being transferred from the Office of the Director to the Branch of Budget Formulation and Implementation ("Budget"), effective May 1, 2005. Baird-Bridges also advised Ms. Sewell that Charlene Dunn, the newly hired Budget Branch chief, would be her supervisor. Ms. Sewell protested the reassignment since her duties directly related to and was in support of the accounting branch.

16. In the budget branch, in addition to her accounting related duties, Ms. Sewell was responsible for analyzing and reporting on the Agency's Detail Fund Report and the space rent report. Ms. Sewell protested this transfer and assignment of duties because she had never been properly trained to prepare the space rent reports and other budget reports expected of her. The space rent budget, in particular, had been previously prepared by Sanabria, who had developed a

particularized and well-regarded expertise as a result of years of training and experience. Nonetheless, Dunn promised Ms. Sewell that she would receive the necessary training to adequately prepare the reports.

17. On or about May 4, 2005, Dunn and Baird-Bridges met with Ms. Sewell to present the performance standards Baird-Bridges had prepared for the rating period ending September 30, 2005. Dunn reiterated that Ms. Sewell would be rated on her performance on the space rent budget reporting. Other than that task, the remaining performance standards were nonspecific, and Ms. Sewell was not clear on what her ratings would be based upon. Ms. Sewell again protested her lack of training in the performance of the space rent task.

18. Despite the promises of providing training to Ms. Sewell, Dunn frustrated and ignored Ms. Sewell's repeated requests for training. For instance, a request by Sanabria that Dunn coordinate the training schedule with Sanabria's supervisor was ignored. Most importantly, Dunn refused to approve the scheduling of any training sessions unless Kimberly Bassett, a younger and new budget analyst, was present during the session. This task was not in Bassett's job description nor was she being rated on it. Indeed, when Bassett was hired, Dunn issued a written directive for staff training of Bassett. Ms. Sewell did not receive the same or equal training opportunities from Dunn that she afforded to the thirty year-old Bassett.

19. On or about May 9, 2005, Dunn assigned Ms. Sewell to a task relating to budget formulation. Ms. Sewell had never worked on budget formulation nor had she ever been trained to do so. Ms. Sewell protested that she should have a Budget Formulation course in order to complete the task Dunn assigned. Dunn agreed, but instructed Ms. Sewell to complete it anyway. With a pending due date on the report, Ms. Sewell gamely attempted to complete the report with no training

or support and began to believe that she was not meant to complete the report.

20. Because of the constant harassment she was forced to endure, Ms. Sewell, who was about four months shy of her 64th birthday, decided to accelerate her retirement plans from 2007 to September 2005.

21. On June 10, 2005, Dunn and Sanabria's supervisor, Larry Jarl, organized a training session for Ms. Sewell for 10:30 that morning. Bassett was to attend that training session as well. Immediately prior to the meeting, Ms. Sewell observed Jarl leave Baird-Bridges' office then come into the training session. At that session, which was attended by Ms. Sewell, Sanabria, Bassett and Jarl, Sanabria reviewed how he prepared the space rent budget report. A second training session was scheduled for June 15, 2005. Following the session, Ms. Sewell observed Jarl leave the meeting room and go directly into Baird-Bridges' office.

22. When Ms. Sewell returned to her work station from the training session, she noticed an email in her inbox that had been sent from Dunn within five minutes of the end of the training session. Though Dunn knew that the training on the space rent report had not been completed, the email instructed Ms. Sewell to complete the May report by June 15, 2005. Failure to complete the report by that date, admonished Dunn, would "be interpreted as insubordination, and may result in further action." As a result, Ms. Sewell took extraordinary efforts to ensure that the training would be completed in order for her to complete the report.

23. Ms. Sewell immediately asked Sanabria for an emergency training session so that she could complete the May report by the 15th of June, and a session was scheduled for Monday, June 13, 2005. In an email sent after the close of business Friday, June 10, 2005, Dunn canceled the training session scheduled for that day because Bassett was purportedly "unavailable." Since

Bassett would not be available until June 15th, the session was rescheduled for that date, the date Dunn had given Ms. Sewell as a deadline to complete the May report or suffer an adverse employment action.

24. Ms. Sewell knew that she would not be able to complete the report without the June 13th training session and felt, once again, that she was being set up to fail by Dunn and the agency. Ms. Sewell's blood pressure soared and she experienced a panic attack as a result of the stress. Ms. Sewell immediately left the office on medical leave. Before leaving, however, Ms. Sewell advised the office of personnel that she would retire at the end of the pay period, June 24, 2005.

25. On June 15, 2005, Ms. Sewell was examined by her physician and treated for stress related symptoms and increased blood pressure. The physician determined that Ms. Sewell was totally disabled and placed her on medical leave from that day until July 5, 2005.

26. Following her appointment, Ms. Sewell was driven by her son to DOL's offices. Ms. Sewell placed her medical certificate and a leave request in an envelope and gave it to another colleague to give to Dunn. Ms. Sewell observed the colleague slip the unopened envelope under Dunn's office door. Ms. Sewell then sent Dunn an email describing her symptoms and medical diagnosis and detailing her leave request. Ms. Sewell then left the office.

27. Later that day, Ms. Sewell received a phone call from her colleague that Dunn had disclosed Ms. Sewell's private medical information to her. The colleague had also been instructed by Dunn to inquire further of Ms. Sewell's medical condition, as well as the status of the space rent report.

28. Ms. Sewell's complaint charging the United States Department of Labor with unlawful discrimination based on age was dismissed on June 6, 2006, in a Final Agency Decision.

## FIRST CAUSE OF ACTION
### Violation of the ADEA – Disparate Treatment

29. Plaintiff herein adopts and incorporates by reference all the allegations set forth in paragraphs "1" through "28" as if originally pleaded herein.

30. Defendant, through its agents or supervisors, unlawfully discriminated and denied equal employment opportunities, treatment and other terms and conditions of employment against Ms. Sewell in her employment because of her age, without cause or justification, in violation of the Age Discrimination in Employment Act, as amended.

31. As a direct and proximate result of the illegal employment discrimination by Defendant, Ms. Sewell has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress. Ms. Sewell has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

32. Defendant has followed a policy and practice of discrimination in employment against Ms. Sewell on account of her age.

33. Ms. Sewell is informed and believes that the outrageous conduct of Defendant described above was done with malice and with conscious disregard for her federally protected rights. Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a) To award her, under the ADEA, all the back and front pay and fringe benefits she has lost as a result of defendant's unlawful discrimination against her;

(b)  To award her, under the ADEA, compensatory damages in an amount to be determined at trial as the result of the unlawful discrimination against her;

(c)  To award her reasonable attorney's fees and costs of this action; and

(d)  To award her such other and further relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### Violation of the ADEA – Hostile Work Environment

34.  Plaintiff herein adopts and incorporates by reference all the allegations set forth in paragraphs "1" through "33" as if originally pleaded herein.

35.  Defendant, through its agents or supervisors, unlawfully discriminated against Ms. Sewell in her employment when it created and allowed the continuation of a hostile and abusive environment, in violation of the ADEA, as amended.

36.  As a direct and proximate result of the illegal hostile and abusive environment fostered by Defendant, Ms. Sewell has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress.  Ms. Sewell has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

37.  Ms. Sewell is informed and believes that the outrageous conduct of Defendant described above was done with malice and with conscious disregard for her federally protected rights.  Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a)  To award her, under the ADEA, all the back and front pay and fringe benefits she has lost as a result of defendant's unlawful discrimination against her;

(b)  To award her, under the ADEA, compensatory damages in an amount to be

determined at trial as the result of the unlawful discrimination against her;

    (c)    To award her reasonable attorney's fees and costs of this action; and

    (d)    To award her such other and further relief as this Court deems just and proper.

## THIRD CAUSE OF ACTION
### Violation of the ADEA – Retaliation

38.    Plaintiff herein adopts and incorporates by reference all the allegations set forth in paragraphs "1" through "37" as if originally pleaded herein.

39.    Defendant, through its agents or supervisors, unlawfully retaliated in the terms and conditions of her employment against Ms. Sewell when she lodged complaints of discrimination against defendant and its agents in December 2004 and April 2005, without cause of justification, in violation of the ADEA, as amended.

40.    As a direct and proximate result of the illegal employment discrimination and practice by Defendant, Ms. Sewell has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress. Ms. Sewell has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

41.    Defendant has followed a policy and practice of discrimination in employment against Ms. Sewell on account of her EEO activity.

42.    Ms. Sewell is informed and believes that the outrageous conduct of Defendant described above was done with malice and with conscious disregard for her federally protected rights. Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

    WHEREFORE plaintiff respectfully prays this Court:

    (a)    To award her, under the ADEA, all the back and front pay and fringe benefits she has

lost as a result of defendant's unlawful discrimination against her;

    (b)     To award her, under the ADEA in Employment Act, compensatory damages in an amount to be determined at trial as the result of the unlawful discrimination against her;

    (c)     To award her reasonable attorney's fees and costs of this action; and

    (d)     To award her such other and further relief as this Court deems just and proper.

### FOURTH CAUSE OF ACTION
### Violation of the ADEA – Constructive Termination

43.    Plaintiff herein adopts and incorporates by reference all the allegations set forth in paragraphs "1" through "42" as if originally pleaded herein.

44.    Defendant, through its agents or supervisors, unlawfully discriminated and denied equal employment opportunities and other terms and conditions of employment against Ms. Sewell in her employment because of her age, when it caused her premature retirement and constructive termination on June 24, 2005, without cause of justification, in violation of the ADEA, as amended.

45.    As a direct and proximate result of the illegal employment discrimination by Defendant, Ms. Sewell has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress. Ms. Sewell has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

46.    Defendant has followed a policy and practice of discrimination in employment against Ms. Sewell on account of her age.

47.    Ms. Sewell is informed and believes that the outrageous conduct of Defendant described above was done with malice and with conscious disregard for her federally protected rights. Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a) To award her, under the ADEA, all the back and front pay and fringe benefits she has lost as a result of defendant's unlawful discrimination against her;

(b) To award her, under the ADEA, compensatory damages in an amount to be determined at trial as the result of the unlawful discrimination against her;

(c) To award her reasonable attorney's fees and costs of this action; and

(d) To award her such other and further relief as this Court deems just and proper.

### FIFTH CAUSE OF ACTION
### Violation of the Privacy Act of 1974

48. Plaintiff herein adopts and incorporates by reference all the allegations set forth in paragraphs "1" through "47" as if originally pleaded herein.

49. Defendant, through its agents or supervisors, unlawfully disseminated and disclosed, without plaintiff's consent, confidential medical information protected under the Privacy Act of 1974, in violation of 5 U.S.C. § 552, as amended.

50. As a direct and proximate result of the illegal disclosure by Defendant, Ms. Sewell has suffered, and continues to suffer, severe pain and suffering and extreme mental anguish and emotional distress. Ms. Sewell has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

51. Ms. Sewell is informed and believes that the outrageous conduct of Defendant described above was done with malice and with conscious disregard for her federally protected rights. Defendant, through its officers, managing agents and/or other supervisors authorized and/or ratified the unlawful conduct.

WHEREFORE plaintiff respectfully prays this Court:

(a) To award her, under the Privacy Act, all the back and front pay and fringe benefits she has lost as a result of defendant's unlawful discrimination against her;

(b) To award her, under the Privacy Act, compensatory damages in an amount to be determined at trial as the result of the unlawful discrimination against her;

(c) To award her reasonable attorney's fees and costs of this action; and

(d) To award her such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully requests a jury trial on all issues.

Respectfully submitted,

_____
Lisa Alexis Jones, Esq.
Lisa Alexis Jones, PLLC
Unified Bar Number 421002
1200 G Street, N.W.
Suite 800
Washington, D.C. 20005
(202) 434-4507
(202) 434-8707 (Fax)
orbitcv@erols.com

*Counsel for Plaintiff*

Dated: August 30, 2006