# EXHIBIT 5

AFFIDAVIT

DISTRICT OF COLUMBIA:

I, Anne Baird-Bridges, make the following statement freely and voluntarily to Jeffrey Juster, who has identified him/herself to me as a Contract EEO Investigator for the U.S. Department of Labor, investigating a complaint of discrimination filed by Audrey Sewell, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to the interested parties (those with a legal right to know). I hereby solemnly swear or affirm:

1. I have been informed that the issue accepted for investigation is

Whether, because of her age and in reprisal for filing a discrimination complaint, Ms. Sewell's supervisor retaliated against her by transferring her on April 18, 2005, assigning her work for which she was not trained, and forcing her to retire.

2. I have been Director, SES,  Office of Management Administration and Planning (OMAP), Employment Standards Administration (ESA) since November 2000.  I previously worked for the Department of Housing and Urban Development.  When I arrived, Audrey Sewell was assigned to the Office of the Director of the Division of Financial Management (DFM). Subsequently, for a period of about a year and a half when the DFM Director position was vacant, I served as the acting DFM Director in addition to my duties as OMAP Director.

3.    My date of birth is March 22, 1946.  As far as I am aware, there is not much difference between my age and Ms. Sewell's age.  I did not discriminate against her because of her age.  I did not try to get her to retire.  I could retire myself but wish to continue to work.  I understand that other employees may wish to continue to work even though they may be eligible for retirement and respect their desire to continue working as long as they wish to remain productive employees.

Initials _Cbb_

F3-1876

4.    In December 2004, Ms. Sewell brought a grievance regarding a letter of reprimand she received from my Deputy who was, at the time, serving as Ms. Sewell's first-line supervisor. I was the Step Two Deciding Official and sustained the letter of reprimand. I do not recall whether Ms. Sewell claimed that the letter of reprimand was discriminatory. I met with Ms. Sewell and Ms. Linda Copening, her Local 12 representative, on March 9, 2005 to discuss the issues in her grievance. Ms. Vastano and Ms. Helen White, ESA Labor Relations Specialists, also attended. I do not recall being informed Ms. Sewell instituted a grievance against me for harassment claiming that I had discriminated against her. I did not retaliate against Ms. Sewell because she filed grievances in which she claimed discrimination.

5.    On April 8, 2005, I sent an email to Ms. Sewell and a number of other DFM staff members regarding a meeting I was setting up. Our email system allows for what amounts to a return receipt to come back to the sender of the email showing that the recipient had received the email and opened it. When I did not receive a return receipt from Ms. Sewell, I went to her desk to find out if she received my email. She later claimed that I acted in a violent manner toward her, threatened and yelled at her, raised my finger to her. I did not. She acted in an inappropriate manner toward me, would not listen to what I was trying to say, kept interrupting me. Ms. Sewell has had a number of confrontations with other employees over the years. She can be a very difficult person to deal with. Ms. Sewell told me her computer did not have the capacity to send back return receipt emails. I knew that this was not the case. All of our computers had been set up with this capability. I instructed her to call the IT help desk. They determined that the return receipt feature was on Ms. Sewell's computer but she had turned it off. IT turned it back on. At some point I was contacted by an EEO Counselor because Ms. Sewell had contacted

F3-2 of 6

EEO about this matter. I do not remember exactly when EEO contacted me. I did not retaliate against Ms. Sewell because she contacted EEO about this incident.

6.    Since I was acting as DFM Director, as well as OMAP Director, I needed to prepare performance standards in 2005 for the people who were reporting to me including Ms. Sewell. This was the first time I was responsible for doing their performance standards. As part of this process, I pulled Ms. Sewell's position description and upon reviewing it realized that the duties clearly included budget responsibilities. Therefore it made more sense for Ms. Sewell, or anyone occupying that position, to report to the Chief of the Budget Branch. This reassignment did not change the duties in Ms. Sewell's position description nor did it change her pay or grade. Her position description remained the same. Ms. Sewell's major duties and responsibilities did not change although some of her specific assignments changed after the reassignment. For example, I understand that Ms. Dunn assigned her responsibility for completing a table for inclusion in the Departmental budget. As a manager I have to look to see how work has shifted over time, where we might have shortages, and then make assignments as they best meet the current needs. I believed Ms. Sewell could better contribute to the Division in Budget than in a position which reported to the vacant Director's position. It was a business decision and had nothing to do with Ms. Sewell's age or that she had made discrimination claims. I did not make the reassignment in order to get Ms. Sewell to retire.

7.    At the same time, I determined to reassign two other employees. One of them, Bettye Keller, like Ms. Sewell, had reported organizationally to the DFM Director. Since there was no DFM Director at present and no expectation that we would fill the position in the foreseeable future, it was a better use of resources to transfer Ms. Keller to Budget where we had need of her skills. Ms. Keller's position description did not change. Vicente Sanabria had been working in

Initials *alub*

F3-3 96

Budget as a Budget Analyst. However, he was an Accountant by trade and it seemed a better fit to reassign him to a vacant Accountant position in the Accounting Branch where we had greater need for him than in the Budget Branch. His position description changed. I took both of these actions for good business reasons. Ms. Keller continues to work in the position to which she was reassigned. Mr. Sanabria has taken another job with FDIC.

8.    Ms. Sewell's supervisor in Budget was Charlene Dunn. I expected Ms. Dunn to successfully manage Ms. Sewell. I did not direct Ms. Dunn to create any situation that might compel Ms. Sewell to retire. We both wanted Ms. Sewell to succeed. Ms. Sewell had the skills to assist Ms. Dunn in Budget. It should have been a good fit. Ms. Sewell has analytic skills and has proved herself to be very capable in the past. She is a smart person. Before the reassignment, Ms. Sewell had very little work to do. I believe she would be the first to admit she was being vastly underutilized. In Budget we had real work we needed someone to do and this work was already in Ms. Sewell's position description. Ms. Sewell was available and capable and the reassignment required no alteration to her position description.

9.    I had no direct involvement in the rent report assignment that Mr. Sanabria was to hand off to Ms. Sewell and any arrangements there may have been for training Ms. Sewell. I noted that responsibility for the GSA rent program is the first major duty listed in her position description and has been there since 1999. Therefore, Ms. Sewell should have been capable of doing the rent report without the need for a substantial amount of training.

10.    I approved a sick leave request Ms. Sewell submitted in June 2005. I believe there was some question originally about the sufficiency of the documentation provided by Ms. Sewell's physician. Sometimes the physician does not provide the specificity of information we need. This comes up from time to time. Ms. Sewell was treated no differently than any other employee

F3- 4 of 6

Initials _alb_

in requesting the type of medical documentation required to support the amount of sick leave requested.

11.    I thought that Ms. Sewell's reassignment to Budget would fill a void we had there with a person who had the knowledge and abilities to get the work done and was fully capable of doing the job successfully. Ms. Sewell had not had sufficient work to occupy her full time work for a number of years. The reassignment gave her the opportunity to contribute more fully to the office. In making the reassignment, I had no intention of trying to get her to retire. I fully expected her to remain working at a successful level for as long as she wished to continue working.

I have read this statement, consisting of 5 pages, and it is true, complete, and correct to the best of my knowledge and belief.

_Anne Baird-Bridger_
Signature

_1/17/06_
Date

Signed and sworn to before me
on this ____ day of _____, ____,
at _____.

_Priscilla Cann_
Neutral witness, notary, or Investigator

F3-5of6

Initials _abb_

### PRIVACY ACT NOTICE TO EEO COMPLAINT INTERVIEW WITNESSES (OTHER THAN COMPLAINANT) FOR DISCRIMINATION COMPLAINT INVESTIGATION INTERVIEW

#### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, **1974, for individuals** supplying information for inclusion in a system of records.

#### AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613/1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

#### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the equal employment opportunity (EEO) complaint of discrimination and/or reprisal. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the EEO complaint of discrimination and/or reprisal. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to Equal Employment Opportunity Commission activities, or to others for uses as published in the Federal Register.

#### EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary; however, failure to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you up to and including removal. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_____
Signature of Interviewer

_____
Date

*Anne Baird - Bridge*
Signature of Affiant

*200 Constitution Ave NW  Washington, D C 20210*
Place

F3-6 of 6

Initials *abb*