# EXHIBIT 25

Case 1:06-cv-01534-ESH   Document 16-28   Filed 11/05/2007   Page 1 of 8

**U.S. Department of Labor**

Administrative Review Board
200 Constitution Avenue, N.W.
Washington, D.C. 20210

JUN - 6 2006

**VIA OVERNIGHT DELIVERY**

Ms. Audrey L. Sewell
c/o Lisa Alexis Jones, Esq.
1200 G. Street, N.W., Suite 800
Washington, D.C. 20005

        Re: Complaint of Audrey L. Sewell
            CRC Case No. 05-11-100
            ARB No. 05-135

Dear Ms. Sewell:

      As the Department official designated by the Secretary of Labor to make decisions in matters where the official normally responsible for issuing final decisions has a potential conflict of interest, I submit this final agency decision on your complaint. 29 C.F.R. § 1614.110(b).

      In a formal complaint dated May 23, 2005 and last amended on August 18, 2005, you allege that your supervisor, Anne Baird-Bridges, retaliated against you because of your age and in reprisal for filing a discrimination complaint by transferring you to another branch on April 18, 2005, assigning work for which you were not adequately trained, and "forcing" you to retire. You further allege disparate treatment and harassment by Ms. Baird-Bridges.

      At my direction, these allegations were investigated, a report of the investigation prepared, and a copy of the report provided to you on March 9, 2006. I informed you in that letter that you had the right to request either a hearing before an Equal Employment Opportunity Commission (EEOC) Administrative Judge or an immediate final decision from the Department of Labor. *See* EEO regulations at 29 C.F.R. § 1614.108(f). I asked you to notify me of your choice within 30 days, and stated that if not notified, I would issue a final decision. As you did not inform me of your choice, I have prepared this final agency decision.

      After a careful review of the investigative report and the relevant law, I find that you have failed to prove discrimination.

**Background**

      You were a GS-11 financial management specialist in the Employment Standards Administration's (ESA) Office of Management Administration and Planning (OMAP). For

thirty-three years, you worked in OMAP's Division of Financial Management, which included the Office of the Director, the Budget Formulation and Implementation Branch, and the Accounting and Financial Services Branch. At a March 14, 2005 meeting about your performance standards, Ms. Baird-Bridges, to whom you reported, assigned you two new duties. Report of Investigation (ROI) Exhibits 2-4, 11. On April 18, 2005 Ms. Baird-Bridges transferred you from the Office of the Director to the Budget branch, effective May 1. Your position title, series, and grade did not change. Charlene Dunn was chief of the Budget branch and she became your supervisor. ROI Exhibit F-8.

In your new branch, you were asked to prepare monthly reports on the detail fund and space rent budgets. You received training on how to analyze the detail fund report, ROI F-6, but space rent training was delayed because the person previously in charge, Vicente Sanabria, was too busy learning his new job in the Accounting branch. ROI F-2.

At a May 4, 2005 meeting, Ms. Dunn instructed you to ask Mr. Sanabria to make time to train you so that you could prepare the space rent reports for that month and to report back if he did not. ROI F-2. You contacted him several times, and he gave you a brief overview of the automation he had developed, but asked that you have Ms. Dunn contact his supervisor to order further training. You forwarded his e-mail to Ms. Dunn on May 18, 2005 but heard nothing further until June 7. Meanwhile, Ms. Dunn gave you a budget formulation assignment, which you were unable to "figure out" how to do. ROI F-2.

You had plans to retire in 2007, but decided to advance the date to September 2005. On June 7, Ms. Dunn asked you about the May space rent report, which had been due by mid-month. You told her that you were meeting with Mr. Sanabria on June 10 to start the training. You also told her that you planned to retire on September 3, 2005. At the June 10 meeting, Mr. Sanabria explained the space rent reporting program to you, his supervisor, and Kimberly Bassett, a new budget analyst. He scheduled further training for you and Ms. Bassett. ROI F-2.

After the June 10 meeting, Ms. Dunn sent you an e-mail, noting your retirement plans and addressing your concerns about your present performance standards and job responsibilities. Ms. Dunn explained why the space rent program had been assigned to you and set a deadline of June 15 for you to complete the May report. She stated that your failure to complete the report would "be interpreted as insubordination, and may result in further action." ROI F-9c.

Mr. Sanabria's scheduled training for you and Ms. Bassett on Monday, June 13, was canceled because Ms. Bassett, who was to take over the space rent project, was unavailable. That day you informed the personnel office that you would retire at the end of the pay period. You felt that you were being set up by Ms. Dunn because you could not complete the May report by the June 15 deadline without training. You called in sick on June 14 and saw a physician on June 15. ROI F-2.

Later that day, you took the doctor's medical certificate, stating that you were incapacitated due to high blood pressure, to the office and requested sick leave through June 24, 2005. Ms. Dunn sought more information about your medical condition. After a series of e-mail

messages between Ms. Dunn and a union steward, your leave was approved, and you retired on June 24. ROI F-2, F-9d.

**Analysis**

To establish a claim of prohibited employment discrimination, the employee must either produce direct evidence of discrimination or demonstrate a prima facie case of discrimination through circumstantial evidence. To establish a prima facie case of discrimination, the employee must set forth evidence which, if left otherwise unexplained, would support an inference of discrimination. If the employee establishes a prima facie case, then the burden of production shifts to the employer to articulate a legitimate non-discriminatory reason for its challenged actions. If the employer does this, the employee must then prove, by a preponderance of the evidence, that the legitimate reasons articulated by the employer were a pretext for prohibited discrimination. *McDonnell Douglas v. Green*, 411 U.S. 792 (1973); *see Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *Fox v. Certainteed Corp.*, 198 F.3d 245 (6th Cir. 1999), *citing St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

*Reprisal discrimination*

In this case, the record contains no direct evidence of reprisal. To establish a prima facie case of reprisal based on circumstantial evidence, the employee must show that: (1) he participated in a protected activity as identified in 29 C.F.R. § 1614.101(b); (2) agency officials taking the adverse action at issue were aware of the protected activity; (3) the employer took an adverse employment action against the employee; and (4) there was a causal connection between the protected activity and the adverse employment action. *Witmire v. Dept. of Air Force*, No. 01A00340, 2000 WL 1489753 (2000); *Cullom v. Brown*, 209 F.3d 1035, 1040 (7th Cir. 2000). Such a causal link may be shown by evidence that the adverse treatment followed the protected activity within such a period of time and in such manner that a reprisal motive is inferred. *Clay v. Dept. of Treasury*, EEOC Appeal No. 01A35231 (Jan. 25, 2005). *See Weigel v. Baptist Hospital of East Tennessee*, 302 F.3d 367, 381 (6th Cir. 2002).

You stated in your affidavit that Ms. Baird-Bridges retaliated against you because you filed two union grievances in December 2004, one against her deputy, Patricia Vastano, relating to a letter of reprimand, and the other against Ms. Baird-Bridges, charging her with fostering a hostile work environment. You claimed that the April 18, 2005 transfer to the Budget branch was in retaliation for filing these grievances and closely followed your meeting with an EEO counselor concerning an altercation you and Ms. Baird-Bridges had on April 8, 2005 about e-mail functions. You alleged that further retaliation came in the form of assigning you duties without providing adequate training. You claimed that because no training was provided, you felt forced to retire, which constitutes a constructive discharge. ROI F-2.

Initially, I find that the grievances you filed do not constitute protected activity as defined at 29 C.F.R. § 1614.101(b). Any action contained in a union grievance may not also be included in a discrimination complaint filed under the EEO program. *See* 29 C.F.R. § 1614.107(a)(4).

Therefore, your grievances concerning the letter of reprimand from your supervisor and your bare allegation that Ms. Baird-Bridges harassed you may not be included in your EEO complaint.

While consulting an EEO counselor would be considered protected activity, the record evidence does not support your claim that your transfer from the Director's office to the Budget branch was in reprisal for filing an informal complaint.

First, you were not the only employee transferred. A clerical employee, Bettye Keller, was reassigned with you, and Mr. Sanabria was reassigned from Budget to Accounting. Ms. Baird-Bridges explained that the vacant Director position would remain so for some time. As a better use of resources, she switched you to Budget, where your skills were needed, and Mr. Sanabria to Accounting because he was a trained accountant. ROI F-3. Ms. Baird-Bridges added that the reassignment required no change in your position description, which contained budget responsibilities, including the space rent program. ROI F-9a.

Second, the transfer itself does not constitute an adverse action because there was no adverse impact on the terms, conditions, or privileges of your employment. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)(defining a tangible adverse action as a change in employment status, hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a significant change in benefits). While you were assigned two new reports to run, your grade, title, and earnings remained the same. You admitted that you were familiar with the space rent program from your work in 1997-2000, and you indicated no problem with the detail fund report. ROI F-2.

Nonetheless, when reprisal is alleged, as in this case, an adverse action need not materially alter the terms and conditions of employment to state a viable claim, but rather must be based on retaliatory motivation and be reasonably likely to deter complainant or others from engaging in protected activity. EEOC's Compliance Manual, Section 8, "Retaliation," No. 915.003 (May 20, 1998). *See Spicer v. U.S. Postal Service*, EEOC Appeal No. 01A60854 (May 10, 2006).

You allege that your EEO complaint concerning the April 8, 2005 altercation motivated Ms. Baird-Bridges to retaliate by transferring you to the Budget branch. You have, however, produced no evidence that would give rise to an inference of retaliatory motivation on the part of Ms. Baird-Bridges. She had assigned you to prepare the two reports prior to the April 8 incident, and explained the rationale underlying your transfer and that of the other two employees. Ms. Baird-Bridges believed that you would "better contribute" in the Budget branch rather than in a position which reported to the vacant Director's office. ROI F-3.

Third, the assignment of your new duties preceded the April 8, 2005 altercation between you and Ms. Baird-Bridges, which led to your filing of an informal EEO complaint. You stated that you met with Ms. Baird-Bridges on March 14, 2005 to review your performance standards, and that was when the new reports were assigned. Because the assignments were made before the April 18, 2005 transfer meeting, they could not constitute reprisal for filing an EEO complaint.

Your allegations that you were denied adequate training and were assigned tasks you could not do are also not supported by the record evidence. At the March 14, 2005 meeting, Ms. Baird-Bridges informed you that Mr. Sanabria would train you on producing the space rent report. You informed him of this the same day, but did not pursue training further. At the May 4 meeting, Ms. Dunn told you to go to Mr. Sanabria and tell him to make training you a priority. She also instructed you to report back to her if he had a problem with that, because the May report needed to be completed by mid-month. While you did meet with Mr. Sanabria once and forwarded his May 17 e-mail to Ms. Dunn, you did not insist on the training even though Ms. Dunn had emphasized that you were responsible for the space rent report. Ms. Dunn stated in her affidavit that you had five weeks to obtain the training but procrastinated because you did want to be in the Budget branch. ROI F-4.

On May 9, 2005, Ms. Dunn assigned you a departmental budget formulation exhibit to prepare and offered written materials and other assistance. ROI F-2. She stated that at first you were responsive because you wanted to learn new things, but then became fearful of completing the assignment. Ms. Dunn added that you clearly had the ability to complete the task, which was not complicated, but you "kept discrediting" your own skills. ROI F-4. You stated that you felt you were being set up to fail, but there is no evidence that Ms. Dunn or Ms Baird-Bridges wanted you to fail. Ms. Dunn stated that you were "bright and quite capable," but shortchanged yourself. And nothing in the record indicates any adverse action resulting from your failures to obtain training or complete the budget task.

Finally, you allege that the cumulative effect of your supervisors' actions "forced" you to retire, thus constructively discharging you.

The central question in a constructive discharge case is whether the employer, through its unlawful discriminatory behavior, made the employee's working conditions so difficult that any reasonable person in the employee's position would feel compelled to resign. *Carmon-Coleman v. Dep't of Defense*, EEOC Appeal No. 07A00003 (April 17, 2002). The EEOC has established three elements which a complainant must prove to substantiate a claim of constructive discharge: (1) a reasonable person in the complainant's position would have found the working conditions intolerable; (2) conduct that constituted discrimination against the complainant created the intolerable working conditions; and (3) the complainant's involuntary resignation resulted from the intolerable working conditions. *Jambora v. U.S. Postal Service*, EEOC Appeal No. 07A40128 (May 16, 2006).

The record contains no evidence of intolerable working conditions. You continued to work at home two days a week and indeed related no instances of intolerable conditions or supervisory actions that would impel a reasonable person to resign. You simply stated that you "felt" you were being set up and were "forced" to resign. Such bare allegations are insufficient to establish the elements of constructive discharge.

*Age Discrimination*

To establish a prima facie case of age discrimination, a complainant must demonstrate that (1) she is more than 40 years old and (2) was treated differently than similarly situated employees significantly younger. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).

You have produced no comparative or statistical evidence from which I can infer that your age was considered in transferring you from the Director's office to Budget or assigning you new duties. The record establishes that Ms. Baird-Bridges had sound business reasons for transferring you, Ms. Keller, and Mr. Sanabria and that Ms. Dunn hoped you would become a productive member of the Budget branch.

As for similarly situated employees who were significantly younger and were treated differently, you alleged that Ms. Bassett was provided a training schedule but you were not. As Ms. Dunn explained, Ms. Bassett was the lead budget analyst, had 12 years of experience, and needed no training. Rather, she met with each of her analysts to review their programs and responsibilities. Thus, she was not similarly situated.

### Conclusion

As the above discussion indicates, you have failed to establish a prima facie case of reprisal discrimination. Accordingly, I conclude that the agency has not unlawfully discriminated against you. Therefore, your complaint is dismissed.

If you are dissatisfied with this final agency action, you may file a notice of appeal with the EEOC and with this office at any time up to thirty (30) calendar days after your receipt of this decision. 29 C.F.R. §§1614.401-403. The appeal should be submitted to the:

> Director
> Office of Federal Operations
> Equal Employment Opportunity Commission
> P. O. Box 19848
> Washington, D.C. 20036

and should indicate what is being appealed. 29 C.F.R. §1614.403.

Any statement in support of the appeal must be submitted to the EEOC's Office of Federal Operations and to this office within thirty (30) calendar days of your filing of the notice of appeal. The regulations at 29 C.F.R. §1614.403(a) encourage the use of EEOC Form 573 in presenting an appeal to the EEOC and a copy of this form is enclosed.

If you elect not to appeal to the EEOC, you may file a civil action in an appropriate U.S. District Court within ninety (90) calendar days of your receipt of this decision. If you file an appeal with the EEOC, you may still file a civil action in the appropriate U.S. District Court within ninety (90) calendar days of your receipt of the EEOC's final decision

on your appeal. 29 C.F.R. §1614.407(a). A civil action may also be filed any time after one hundred and eighty (180) days from the date of filing your appeal with the EEOC if a final decision has not been issued by the Office of Federal Operations. 29 C.F.R. §1614.407(d).

Finally, you are advised that if you file a civil action you must name the head of the department or agency as defendant. Failure to name the head of the department or agency may result in the loss of any judicial redress to which you may be entitled. The head of the Department of Labor is Elaine L. Chao, Secretary of Labor.

Yours truly,

M. Cynthia Douglass
Chair

Enclosure: Form 573

cc:   Milton Blount, Jr.
      EEO Manager, OASAM
      Room S-1513A

      Ms. Audrey L. Sewell
      1301 7th Street, N.W., Apt. 315
      Washington, D.C. 20001