UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AUDREY L. SEWELL,                )
                                 )
        Plaintiff,               )
                                 )
        v.                       )        Civil Action No. 06-1534 (ESH)
                                 )
ELAINE CHAO, Secretary           )
Department of Labor,             )
                                 )
        Defendant.               )
_____)

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

This Reply Brief, together with Defendant's Motion for Summary Judgment ("Def. MSJ"

or "Opening Brief"), demonstrate that Defendant is entitled to summary judgment on all of

Plaintiff's discrimination and retaliation claims.

Plaintiff, upon reviewing Defendant's Opening Brief, apparently recognized that her

Privacy Act claim was totally frivolous and withdrew it.  See Plaintiff's Opposition at n.8.

Plaintiff's remaining claims similarly lack merit and should be dismissed.  Plaintiff either admits

or should be deemed to have conceded all but four (4) of Defendant's sixty seven (67) material

facts not in dispute.  See Defendant's Reply to Plaintiff's Statement of Purportedly Disputed

Material Facts ("Defendant's Response") (attached hereto).  The disputes Plaintiff does raise are

either immaterial, not supported by competent evidence, or undisputed.  See id.  Her opposition

is based on speculation and unsupported assertions.  Such defective evidence is not sufficient to

establish a *prima facie* case of discrimination or retaliation or, in the alternative, establish

pretext; therefore, summary judgment is appropriate in Defendant's favor.

## II.     STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 248 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 587 (1986).  In determining whether there exists a genuine issue of material fact, the Court must view all facts, and reasonable inferences to be drawn from them, in a light most favorable to the non-moving party.  <u>Anderson</u>, 477 U.S. at 255.  If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted."  <u>Id.</u> at 249-50.

Though Plaintiff might wish it otherwise, the employment discrimination statutes did not transform federal courts into review boards for local employment decisions.  <u>See</u> <u>Barbour v. Browner</u>, 181 F.3d 1342, 1346 (D.C. Cir. 1999).  To the contrary, a court "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" <u>Fischbach v. District of Columbia Dep't of Corrections</u>, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting <u>Milton v. Weinberger</u>, 696 F.2d 94, 100 (D.C. Cir. 1982)).  Where, as here, a plaintiff offers no direct evidence of discrimination, employment discrimination claims are governed by the familiar framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 803-805 (1973). Under this test, Plaintiff has the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination.  <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981).  If Plaintiff is able to establish a *prima facie* case, then given Defendant's legitimate, nondiscriminatory reason, Plaintiff must present evidence that the stated reason merely was a pretext for discrimination.  <u>Id.</u>  Of course, at all times, Plaintiff retains the ultimate

burden of persuasion to demonstrate that she was in fact the victim of <u>intentional</u> discrimination. <u>Burdine</u>, 450 U.S. at 252-53.

## III.    ARGUMENT

### A.    Plaintiff Fails To Establish A <u>Prima Facie</u> Case Of Age Discrimination

Plaintiff's claims concerning (1) being assigned the Detailed Fund Report and the Space Rent Report; (2) failing to receive formal training to complete the reports; and (3) being reassigned to the Budget Branch, fail because they do not establish an adverse employment action.  First, Plaintiff admits that she was responsible for completing numerous financially analytical reports during the last five years of her employment, including the Working Capital Fund report, the Object Status of Funds Report, the Permanent Change of Station Report, as well as helping with the financial report for the Agency at the end of the year.  <u>See</u> Plaintiff's Statement of Material Facts in Dispute ("Plaintiff's Response" or "Pl. Response") at ¶¶ 5-6, 8, 9, 11.  In addition, Plaintiff admits that she used spreadsheets to keep track of funds collected nationwide as civil money penalties for violations of the Fair Labor Standards Act.  <u>See id.</u> at ¶ 7.  Moreover, Plaintiff admits that since 1999, responsibility for the GSA rent programs appears as the first major duty listed in her position description.  <u>See id.</u> at 15.  Further, Plaintiff admits that she could have completed the Detailed Fund Report without training.  <u>See id.</u> at ¶ 14. Lastly, Plaintiff is deemed to have conceded that the reassignment did not change her pay or grade, and that there was promotion potential for her in the Budget Branch.  <u>See id.</u> at ¶ 21, 22; Defendant's Response to Pl. Response at II. B.

Given the foregoing admissions, Plaintiff cannot and has not adduced evidence demonstrating that she suffered an adverse employment action. As Defendant noted in its Opening Brief, "[i]n determining whether a challenged action constitutes an adverse

employment action, a court should focus on 'ultimate employment decisions' such as 'hiring, granting leave, discharging, promoting, and compensating,' not intermediate decisions.'" <u>Lester v. Natsios</u>, 290 F.Supp.2d 11, 28 (D.D.C. 2003) (quoting <u>Taylor v. FDIC</u>, 132 F.3d 753, 764 (D.C. Cir. 1997).  While "[e]mployer actions short of outright firing or non-selection for promotion can be adverse, . . . not all lesser actions count for purposes of [ADEA] liability." <u>Lester v. Natsios</u>, 290 F.Supp.2d at 28 (citation omitted).  Therefore, "to establish an adverse personnel action in the absence of diminution in pay or benefits, plaintiff must show an action with materially adverse consequences affecting the terms, conditions, or privileges of employment." <u>See id.</u> (internal quotation and citations omitted); <u>see also</u> <u>Inc. v. Ellerth</u>, 524 U.S. 742 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with *significantly* different responsibilities, or a decision causing significant change in benefits.") (emphasis added).

Here, Plaintiff's purported facts fall significantly short of this standard.  In Plaintiff's Memorandum in Opposition ("Opposition") to Defendant's Opening Brief, she relies upon a combination of rank speculation, unsupported conclusions, and immaterial factual allegations to support her various theories of age discrimination.  For example, she offers her "concern that [Ms.] Vastano was improperly and without any basis revising the appraisal completed by Gary Thayer," and speculates whether "this is a [sic] Age Discrimination tactic, to pressure [her] into retiring . . ." <u>See</u> Opposition at 4.  Plaintiff's unalloyed speculation is incompetent to create a genuine issue of fact.  <u>See</u> <u>Rogers Corp. v. EPA</u>, 275 F.3d 1096, 1103 (D.C. Cir. 2002) ("Although the finder of fact may draw inferences from the evidence, they must be reasonably probable, and based on more than speculation."); <u>McGill v. Munoz</u>, 203 F.3d 843, 846 (D.C. Cir. 2000) (witness's "speculation that it 'could' take an hour-and-a-half is not evidence that it 'did'

take anyone--other than plaintiff--that long"); <u>Brown v. Brody</u>, 199 F.3d 446, 459 (D.C. Cir.

1999) (plaintiff's mere "speculations and allegations" are "insufficient to create a genuine issue

of fact") (internal quotation omitted).  In any event, the alleged offending appraisal lists Mr.

Thayer as the "ranking" official, and Plaintiff proffers no evidence that Ms. Vastano did

anything other than approve his ranking.  <u>See</u> Ex. 26.

 Plaintiff further speculates that Ms. Baird-Brides purposely made the Detailed Fund

Report more tedious "by insisting that [Plaintiff] manually type every account entry," because

Ms. Baird-Bridges was "mad" that Plaintiff "could complete the report without any difficulties . .

." <u>See</u> Opposition at 8.  Here, Plaintiff is relying on nothing more than her own suspicion and

opinion regarding Ms. Baird-Bridges's motivation for assigning a particular task.  Similarly,

Plaintiff speculates that she "'gave them the out' to set Plaintiff up for failure when [Plaintiff]

admitted that she did not [know] how to do the space rent report." <u>See</u> <u>id.</u> at 9.  Additionally,

when Plaintiff received an email from Ms. Dunn on June 8, 2005, regarding Plaintiff's

responsibility to complete the Space Rent Report by June 15, Plaintiff "thought the tone and

phrasing of Dunn's email was eerily familiar," and "firmly believed that Vastano, not Dunn, had

written the email." <u>See</u> <u>id.</u> at 18.

 These foregoing examples demonstrate that Plaintiff does not have the record evidence to

meet her burden of proof, and invites the Court to rely on her guesswork and unfounded

suspicions to fill in the gaps.  This tactic cannot defeat summary judgment.  <u>See</u> <u>Rogers Corp. v.</u>

<u>EPA</u>, 275 F.3d at 1103 ("Although the finder of fact may draw inferences from the evidence,

they must be reasonably probable, and based on more than speculation.").  Moreover, Plaintiff

fails to provide facts showing how her new duties and reassignment produced "materially

adverse consequences affecting the terms, conditions, or privileges of [her] employment." <u>See</u>

Lester v. Natsios, 290 F.Supp.2d at 28 (internal quotation and citations omitted).  Thus, the fact that Plaintiff "[s]mell[ed] a 'set up,'" see Opposition at 18, is an insufficient basis for the Court to deny Defendant's Motion.

Lastly, although Plaintiff's Complaint introduces Kimberly Bassett as a comparator to demonstrate disparate treatment regarding training (i.e., "Ms. Sewell did not receive the same or equal training opportunities from Dunn that she afforded to the thirty year-old Bassett."), see Complaint at ¶ 18, Plaintiff abandons that position in her Opposition.  See Opposition at 27. Instead, she offers unsupported factual allegations and incompetent evidence from which the Court is expected to draw an inference of unlawful discrimination.  For example, to exaggerate the complexity of the Space Rent Report, Plaintiff alleges that "Kimberly Bassett required *substantial training* in order to complete the report."  See Opposition at 26 (emphasis added). There is no evidence, and none is cited by Plaintiff, establishing that Ms. Bassett required *substantial* training specifically to complete the Space Rent Report.  Moreover, Plaintiff alleges that the Space Rent Report "was to be her *primary* responsibility."  See id. at 28 (emphasis added).  While Defendant admits that the Space Rent Report was *one* of Plaintiff's responsibilities, Plaintiff fails to cite evidence that it was her *primary* responsibility.

Additionally, Plaintiff alleges that "OMAP management surreptitiously copied from Sanabria's computer hard drive his space rent report information and placed it on Bassett's computer."  See Opposition at 11, 27-28.  However, Plaintiff's basis of knowledge for this purported fact appears to be hearsay.  The citation to her EEO affidavit states the following:  "I later learned that Ms. Bassett had all of the data for the reports.  Ms. Anne Baird-Brides had all of Mr. Sanabria's work downloaded from his hard drive to Ms. Bassett's hard drive the weekend of April 16-17, 2005, unknown at that time to Mr. Sanabria . . ."  See Exhibit 3 at ¶ 15.

Presumably Plaintiff learned this information from someone, thus, it is inadmissible hearsay.

See Gleklen v. Democratic Cong. Campaign Comm., Inc., 199 F.3d 1365, 1369 (D.C. Cir. 2000)

(holding hearsay evidence insufficient in sex discrimination case to avoid summary judgment:

"Verdicts cannot rest on inadmissible evidence.  Gleklen's evidence about the conversation is

sheer hearsay; she would not be permitted to testify about the conversation at trial. . . .  *It*

*therefore counts for nothing*.") (emphasis added); Commercial Drapery Contractors, Inc. v. U.S.,

133 F.3d 1, 6 (D.C. Cir. 1998) ("An affidavit like this, consisting entirely of inadmissible

hearsay, is not sufficient to defeat summary judgment.").

        In any event, even if Ms. Bassett received information regarding the Space Rent Report,

Plaintiff is deemed to have conceded that the Division of Financial Management "needed to have

back up, have others cross trained in case the person responsible for the task was not available to

do it."  See Defendant's Response at ¶ 49; Pl. Response at ¶ 49.  Further, Plaintiff admits that she

"didn't expect [management] to give [her] an elaborate training schedule like they gave

[Bassett]."  See Pl. Response at ¶ 48; Defendant's Response at ¶ 48.  Finally, Plaintiff admits

that on only one occasion, training for the Space Rent Report was cancelled and rescheduled so

that Ms. Bassett could participate.  See Pl. Response at ¶ 50; Defendant's Response at ¶ 50.  In

sum, nothing in the record supports Plaintiff's claim of disparate treatment.

**B.    Plaintiff Fails To Establish A Prima Facie Case of Retaliation**

        In this case, Plaintiff cites no direct evidence of retaliation because there is none.  Direct

evidence of a retaliatory motive is a statement by the decision-maker that he or she undertook

the challenged action because the charging party engaged in protected activity.  See e.g.,

Weathersby v. Secretary of Interior, 242 F.Supp.2d 20, 22 (D.D.C. 2003) (selecting official's

comment that she would not want to interview an applicant because he had filed several

discrimination complaints was, if believed by the jury, "a rare thing: direct evidence of a discriminatory and retaliatory motive").

Without direct evidence of retaliation, Plaintiff relies upon the temporal proximity of her protected activities and Defendant's action, in combination with speculation, opinion, and unsupported conclusions.    For example, Plaintiff alleges that Ms. Baird-Bridges was "determined to 'realign' [Plaintiff's] duties two months *after* she had filed grievances against her and her protegee[1] Vastano alleging unlawful discrimination."  See Opposition at 31 (emphasis in original).  As an initial matter, the time between Plaintiff filing a union grievance and Ms. Baird-Bridges assigning her two new duties is *three* months, not two.  See Complaint 8-10.  As Defendant noted in its Opening Brief, although the Supreme Court in Clark Cty. School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001), acknowledged that three months between the protected activity and the challenged action can give rise to an inference of causation, it did not hold that proximity in time alone entitles plaintiffs to judgment in their favor.  Here, Plaintiff alleges nothing more than proximity and speculation.

Moreover, Plaintiff asserts that "a mere two days after Ms. Sewell conferred with the Civil Rights Center about filing an EEO complaint against Baird-Bridges, Baird-Bridges developed an eleventh hour scheme to marginalize Ms. Sewell away from her direct supervision and place her in an environment where Ms. Sewell could be 'handled' without Baird-Bridges's seemingly direct involvement."  See Opposition at 31.  The foregoing attempt to establish a causal link is nothing more than Plaintiff's opinion, and the undisputed facts cut against an inference of retaliation.  Presumably, the "eleventh hour scheme" refers to Plaintiff's

---

[1]  Plaintiff's use of the word "protegee" to describe the relationship between Ms. Vastano and Ms. Baird-Bridges is without record support.

reassignment to the Budget Branch.  Significantly, Plaintiff was not the only employee to receive

a reassignment memorandum on April 18, 2005.  See id. at 12.  Both Vicente Sanabria and

Bettye Keller received memos and were reassigned effective May 1, 2005.  See id.  Thus, if Ms.

Baird-Bridges's motive was retaliatory in nature, then there would have been no reason to

reassign Ms. Sanabria or Ms. Keller.

Further, Plaintiff asserts

> that Baird-Bridges knew that Ms. Sewell had been at the civil
> rights center inquiring about filing an EEO complaint against her
> on Friday afternoon is hardly a matter of speculation.  After all, it
> was no secret that the center's director, Annabelle Lockhart, was a
> close social friend of Baird-Bridges, and it simply defies common
> sense to assert that Lockhart did not tell her close friend that Baird-
> Bridges's employee had just been in the civil rights center lodging
> a complaint against her.

See Opposition at 31.  Although Plaintiff describes the above-conclusion as "hardly a matter of

speculation," that is exactly what it is.  Plaintiff has no citation to support it; in fact, an inference

from the record suggests that the opposite conclusion should be drawn.  On August 1, 2005, Ms.

Lockhart sent Plaintiff a letter advising her that "the Civil Rights Center (CRC) ha[d] transferred

[her] aforementioned EEO complaint to the Chairperson of the Department of Labor's

Administrative Review Board (ARB) for processing due to a potential conflict of interest."  See

Opposition at Ex. FF.  This evidence suggests that Ms. Lockhart was sensitive to the appearance

of bias which could result if her office handled Ms. Sewell's complaint against Ms. Baird-

Bridges.  Equally unpersuasive is Plaintiff's argument that Ms. Baird-Bridges made no effort "to

ensure that Ms. Sewell's December grievance against her ever saw the light of day."  See

Opposition at 33.  Plaintiff cites no evidence to suggest that it was Ms. Baird-Bridges's

responsibility to investigate her own alleged conduct.

Lastly, Plaintiff attempts to create a causal connection between her interview with an EEO counselor on May 3, 2005, and her interaction with Ms. Dunn during the weeks that followed. See id. at 32. Contrary to Plaintiff's characterization, Ms. Dunn did not "repeatedly and callously ignore[] Ms. Sewell's pleas for training and Sanabria's sensible request that Dunn arrange for the training with *his* supervisor." See id. (emphasis in original). Ms. Dunn knew that the Space Rent Report was "a lower level task" and that "Ms. Sewell was fully capable of doing the work." See Ex. 6 (Dunn Aff.) at ¶ 7. Therefore, she expected Plaintiff to meet with Mr. Sanabria to learn how to do this one report. See id. Further, Ms. Dunn "had at least two discussions with Mr. Jarl (Mr. Sanabria's supervisor) and Mr. Sanabria about Mr. Sanabria providing training to Ms. Sewell on the rent report. See id. at ¶ 9.

Additional evidence cutting against Plaintiff's causal connection argument vis-a-vis Ms. Dunn, is that although Ms. Dunn became aware of Plaintiff's December grievances in April 2005, she was "not working for DOL at that time, and would have no knowledge of the actions that Ms. Sewell claimed were discriminatory." See id. at ¶ 3. Moreover, Ms. Dunn "was never contacted by anyone from the EEO office regarding any claim Ms. Sewell may have made about" the alleged verbal attack on April 8, 2005, between Plaintiff and Ms. Baird-Bridges. See id.

Finally, Plaintiff fails to establish a *prima facie* case of retaliation because the new assignments she received do not constitute "material consequences such that it would dissuade a reasonable worker from making or supporting a charge of discrimination." Rochon v. Gonzales, 438 F.3d 1211, 1219-20 (D.C. Cir. 2006); Stone-Clark v. Blackhawk, Inc., 460 F. Supp. 2d 91 (D.D.C. 2006); Edwards v. United States EPA, 456 F. Supp. 2d 72, 82 (D.D.C. 2006). See also Burlington Northern & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2414-15 (2006) ("We agree

-10-

with the formulation set forth by the . . . District of Columbia Circuit[] [in Rochon].").  Relevant here, the alleged adverse action must be material, i.e., the alleged retaliatory act must cause injury or harm to a plaintiff such that a reasonable worker would be dissuaded from making a charge of discrimination.  Burlington Northern, 126 S.Ct. at 2414-15.   However, Plaintiff fails to show that Ms. Vastano, Ms. Baird-Bridges, or Ms. Dunn took action against her with material consequences such that it would dissuade a reasonable worker from making or supporting a charge of discrimination.  Rochon v. Gonzales, 438 F.3d at 1219-20.

As discussed at length in Defendant's Opening Brief, the GSA RENT program "is the first major duty listed in [Plaintiff's] position description and has been there since 1999." See Opening Brief at 30; Ex. 5 (Bridges Aff.) at ¶ 9; Ex. 1 (Position Description).  Indeed, the Major Duties and Responsibilities portion of Plaintiff's position description clearly includes budget responsibilities.  See Exhibit 5 (Bridges Aff.) at ¶ 6.  Moreover, being reassigned to the Budget Branch afforded Plaintiff promotion potential.  See id.  Interestingly, receiving the Detail Fund Report and the Space Rent Report on March 14, 2005, did not dissuade Plaintiff from contacting an EEO counselor on April 8, 2005, or from filing a formal complaint of discrimination against Ms. Baird-Bridges on May 23, 2005.  See Complaint ¶ 14; Exhibit 23 (Formal Complaint). Regarding Plaintiff's claims about denial of training, Plaintiff took sick leave and then chose to voluntarily retire before any potential adverse action could be pursued.  See Ex. 15 (Request for Leave); Ex. 16 ((Disability Certificate); Ex. 17 (Application for Immediate Retirement).

In sum, Plaintiff fails to establish a *prima facie* case of retaliation because she can neither demonstrate a casual link between the alleged retaliatory action and the protected activity, nor show that Defendant took an action against her with material consequences.  Rochon v. Gonzales, 438 F.3d at 1219-20.

**C.    Plaintiff Fails To Establish An Actionable Hostile Work Environment**

As an initial matter, the heading introducing this section in Plaintiff's Opposition signals that she has lost sight of who retains the burden of persuasion in this case. Her heading is entitled: "The Government Has Failed To Establish That It Had Not Created An Abusive And Hostile Environment In Violation Of Title VII." See Opposition at 33. It is well-settled that "at all times, Plaintiff retains the ultimate burden of persuasion to demonstrate that she was in fact the victim of intentional discrimination." See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Plaintiff acknowledges earlier in her Opposition that she "must prove discriminatory intent." See Opposition at 24. That being said, Plaintiff's admissions and total lack of evidence should result in the rejection of her claim.

As Defendant explained in her Opening Brief, in order to establish a *prima facie* case of a hostile work environment, Plaintiff must offer evidence that "the workplace is permeated with *discriminatory* intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (emphasis added); Alexander v. Tomlinson, supra, at *14. The Supreme Court reemphasized in Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998), that the standards for finding a hostile work environment are "sufficiently demanding to ensure that Title VII does not become a 'general civility code'" and that the conduct must be so extreme as to amount to a *change in the terms and conditions* of employment. The Supreme Court directed the lower courts to determine whether an environment was sufficiently hostile or abusive by looking at all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or *a mere offensive utterance*; and whether it unreasonably interferes with an employee's work performance." Faragher, 524 U.S. at

-12-

787-788 (quoting <u>Harris</u>, 510 U.S. at 23) (emphasis added).  Moreover, "[I]t is . . . important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination.  Otherwise, the federal courts will become a court of personnel appeals.  <u>Silver v. Leavitt</u>, 2006 WL 626928 (D.D.C. March 13, 2006) at *11 (unreported) (citing <u>Alfano v. Costello</u>, 294 F.3d 365, 377 (2d Cir. 2002).

Here, Plaintiff admits that whatever comments Ms. Vastano made to her after Gary Thayer left in May 2002 regarding retirement, ceased from January 2003 to 2004 when Yoko Arymerek became Division Director of DFM.  <u>See</u> Pl. Response at ¶¶ 56-57; Defendant's Response at ¶¶ 56-57.    Further, Plaintiff admits that she had minimal contact with Ms. Vastano during this time, and that she ignored Ms. Vastano whenever she made remarks in the hall about Plaintiff retiring.  <u>See</u> <u>id.</u> at ¶ 58.  Moreover, when Janet Hogler replaced Ms. Arymerek as the DFM Director during the latter part of January 2004, Plaintiff admits that she "was not harassed" during the six months of Ms. Hogler's tenure.  <u>See</u> <u>id.</u> ¶ 59.  Plaintiff also admits that Ms. Baird-Bridges "has never herself asked [Plaintiff] to retire, and the only thing she said to [her] about age is - - well, [Plaintiff] was the only one that wore [her] glasses - - around [her] neck."  <u>See</u> <u>id.</u> at ¶ 61.  Lastly, Plaintiff admits that her performance appraisals which cover the rating periods from July 2000 through September 2004, reflect that she received either Outstanding Performance or a Highly Effective Performance.  <u>See</u> <u>id.</u> at ¶ 62.  Given the standard articulated in <u>Faragher v. City of Boca Raton</u>, <u>supra</u>, at 788, the foregoing admissions alone warrant judgment for Defendant.

Even assuming <u>arguendo</u> that Ms. Baird-Bridges was aware of Plaintiff's unhappiness regarding Ms. Vastano's sporadic comments about retirement, evidence of discrimination "does not include stray remarks in the workplace, particularly those made by nondecision-makers or

statements made by decision makers unrelated to the decisional process itself." <u>Kalekiristos v.</u>

<u>CTF Hotel Management Corp.</u>, 958 F. Supp. 641, 665 (D D.C. 1997) (citations and internal

quotations omitted).  While a stray remark may be "probative of discrimination, there must be a

nexus between the stray remark and the adverse employment decision." <u>Id.</u> (citation omitted);

<u>see also</u> <u>Garrett v. Lujan</u>, 799 F. Supp. 198, 200 (D.D.C. 1992) (granting summary judgment to

employer on discrimination claim; holding that "stray remarks by persons not involved in the

employment decision-making process are not material to a finding of discrimination unless those

remarks are made to the decision-makers and have some impact on the selection process").

Furthermore, while longevity of employment is a factor that has a strong correlation with age, . .

. mere correlation - - however strong - - is insufficient if the employer's decision was wholly

motivated by factors unrelated to age." <u>Silver v. Leavitt</u>, <u>supra</u>, at *14 (quotation and citations

omitted).

   Here, Plaintiff not only fails to demonstrate an adverse employment decision, <u>see</u>

Opening Brief at 22-25, but also fails to produce any evidence demonstrating a nexus between

Ms. Vastano's remarks and Ms. Baird-Bridges's and Ms. Dunn's decisions vis-a-vis Plaintiff.

<u>See</u> Opposition at 7-8 (assignment of new duties); 12 (April 18, 2005 reassignment meeting: Ms.

Vastano is present, but *no evidence* that she, rather than Ms. Baird-Bridges, made the

reassignment decisions); 13-18 (Dunn setting deadline for Space Rent Report and assigning

Budget Exhibit).  Beyond Ms. Vastano's remarks, Plaintiff produces no evidence that the work-

related "harassment" she allegedly experienced had any connection to her age.  <u>See</u> Opposition

at 8-18; Def. MSJ at 38-38.

   **D.    Plaintiff Fails To Establish That She Was Subjected To "Intolerable"
        Working Conditions Needed To Support A Constructive Discharge Claim**

In Plaintiff's short argument for constructive discharge, she relies upon sweeping assumptions which have no basis in fact and that misstate her burden of proof.  See Opposition at 35-36.  In order for Plaintiff to prevail on her claim of constructive discharge, she must show that (1) intentional discrimination existed, (2) Defendant deliberately made working conditions intolerable, and (3) aggravating factors justified Plaintiff's conclusion that she had no option but to end her employment.  See Sisay v. Greyhound Lines, Inc., 34 F. Supp.2d 59, 65 (D.D.C. 1998) (citing Villines v. United Brotherhood of Carpenters and Joiners of America, 999 F. Supp. 97, 104-05 (D.D.C. 1998)).  As explained below, Plaintiff has not adduced evidence satisfying any of the three prongs.

Instead of providing facts demonstrating proof of intentional discrimination, Plaintiff offers the conclusion that a " reasonable jury could more than find that Baird-Bridges and Dunn were trying to drive Ms. Sewell from the workplace entirely and that the adverse actions constructed by them were designed to be 'career ending.'"  See id. at 35.  However, as explained in Defendant's Opening brief at 31,  a claim of constructive discharge is a component of an employment discrimination claim; it is a means of satisfying the "adverse employment action" element of a *prima facie* case of discrimination.  See Russ v. Van Scoyoc Associates, Inc., 122 F. Supp.2d 29, 35 (D.D.C. 2000) (citing Mungin v. Katten Muchin & Zavis, 116 F.3d at 1558). Thus, Plaintiff's conclusion makes no sense.  In any event, even if Plaintiff were arguing that a combination of alleged adverse actions caused her to quit, she fails to show how the alleged unfavorable actions give rise to an inference of discrimination.  See Alexander v. Tomlinson, - - F.Supp.2d - -, 2007 WL 2331976 *4 (D.D.C. Aug. 15, 2007) (Huvelle, J.).

Plaintiff also offers her opinion that "[a] blind man could see the setup."  See Opposition at 36.  From that, Plaintiff concludes that she "has produced evidence tending to show that her

retirement was nothing short of coerced." See id. To support her conclusion, Plaintiff cites two cases from the Federal Circuit. See id. Both of these cases are inapposite because they address the requirements for a claim of involuntary resignation or retirement based on coercion, which are different from Plaintiff's requirements in this case. Notably, for a coercion claim, there is no requirement that Plaintiff show intentional discrimination. See Shoaf v. Dep't of Agriculture, 260 F.3d 1336, 1341 (Fed. Cir. 2001).[2] As noted above, supra, at 3-7 and 10-11, and in Defendant's Opening Brief at 22-31, Plaintiff cannot establish a *prima facie* case of discrimination because Defendant's actions do not constitute adverse employment action; therefore, Plaintiff's claim of constructive discharge should fail.

Lastly, Plaintiff's claim should fail because she cannot show any aggravating factors. In a weak attempt to satisfy this high standard, Plaintiff relies upon (1) the warning she received in the December 2004 Letter of Reprimand ("LOR"), and (2) the June 2005 email from Ms. Dunn, as the aggravating factors to support her constructive discharge claim. The December 2004 LOR from Ms. Vastano states the following: "This reprimand not only outlines the intolerable behavior, but also serves as a warning to you that any repeat of *similar* outbursts and insubordination will result in disciplinary action up to and including removal." See Ex. E (emphasis added). Plaintiff interprets this to mean that she will be removed "from federal service in the event of further incidents." See Opposition at 36. First, the behavior referred to in the LOR concerns a discrete series of telephone calls and emails between Ms. Vastano and

---

[2] As a general proposition, to establish involuntariness on the basis of coercion this Court requires an employee to show: (1) the agency effectively imposed the terms of the employee's resignation or retirement; (2) the employee had no realistic alternative but to resign or retire; and (3) the employee's resignation or retirement was the result of improper acts by the agency. See Shoaf v. Dep't of Agriculture, 260 F.3d at 1341.

Plaintiff on December 6 and 7, 2004.  See id.  It is *not* based upon insubordination for failure to complete duties or assignments in an acceptable or timely fashion.  Moreover, the warning does not provide for automatic removal from government service in the event of some future, unspecified insubordination, and a reasonable person would not make such an erroneous conclusion.

Plaintiff also relies upon Ms. Dunn's warning in a June 2005 email, which provides as follows:  "Failure to complete this assignment will be interpreted as insubordination, and *may* result in further action."  See Ex. 10 (emphasis added).  Here again, Plaintiff unreasonably interprets this warning as "[g]et the space rent report completed by June 15, 2005, or be terminated."  See Opposition at 36.  It was Plaintiff's irrational fear that she would be immediately terminated on June 15, 2005, which she deems intolerable and an aggravating factor.  Even assuming, arguendo, that Plaintiff's fears were objectively reasonable, the condition of which she complains only existed for three days because she took sick leave beginning June 13 and never returned to work.  See Pl. Response at ¶¶ 36-38; Defendant's Response at ¶¶ 36-38.

In light of the foregoing, together with the arguments in Defendant's Opening Brief at 31-35, it is clear that Plaintiff has not met her burden of showing an actionable claim of constructive discharge.  See Sisay, 34 F. Supp.2d at 65.

### E.    Plaintiff Failed To Adduce Evidence That Defendant's Explanations Are Pretextual.

In the alternative, assuming, arguendo, that Plaintiff has established a *prima facie* case of discrimination and/or retaliation, Defendant offers well-supported, legitimate, non-discriminatory reasons for its actions.  Regarding the Space Rent Report, it was perfectly

appropriate for Ms. Baird-Bridges to assign to Plaintiff a duty that appears in her Position Description, especially one that has been listed as the *first* major duty since 1999; a fact which Plaintiff admits.  See Pl. Response at ¶ 15; Defendant's Response at ¶ 15; Ex. 1 (Position Description); Ex. 5 (Baird-Bridges Aff.) at ¶ 9.  Similarly, the Detailed Fund Report is commiserate with the types of financial reports Plaintiff was already completing, which is evidenced by her admission that she was already "familiar with the accounting runs."  See Pl. Response at ¶ 14; Defendant's Response at ¶ 14.

Regarding Plaintiff's reassignment to the Budget Branch, Plaintiff admits that at the time of the reassignment, Ms. Baird-Bridges was serving as both the Acting Director of DFM, as well as the Director of OMAP.  See Pl. Response at ¶ 23; Defendant's Response at ¶ 23.  Moreover, Plaintiff is deemed to have conceded that as a manager, Ms. Baird-Bridges looked "to see how work shifted over time, where [DFM] might have shortages, and then make assignments as they best meet the current needs."  See Pl. Response at ¶ 24; Defendant's Response at II. B.  Plaintiff admits that although Ms. Baird-Bridges had filled several key positions, the DFM Director position (under which Plaintiff served before her reassignment) was still vacant.  See Plaintiff's Response at ¶ 25; Defendant's Response at ¶ 25.  Further, Plaintiff also admits that her position description included budget responsibilities, and that Ms. Baird-Bridges knew that Plaintiff had "analytical skills and [had] proved herself to be very capable in the past."  See Plaintiff's Response at ¶¶ 26-27; Defendant's Response at ¶¶ 26-27.  Lastly, Plaintiff admits that Mr. Sanabria and Ms. Keller were reassigned on the same date as Plaintiff.  See Opposition at 12.

Given the foregoing admissions, Plaintiff cannot refute Defendant's well-supported, legitimate, non-discriminatory reasons for its actions and preserve her discrimination and retaliation claims for trial.  See Woodruff v. Peters, 482 F.3d 521, 531 (D.C. Cir. 2007)

(summary judgment granted against plaintiff because plaintiff provided "no basis for rejecting the presumptive validity" of his supervisor's decision). Even if Plaintiff refuted one of Defendant's explanations, which she does not, she still could not defeat summary judgment. See Barnette v. Chertoff, 453 F.3d 513 (D.C. Cir. 2006) (although record evidence did not support agency's first explanation, that it had a policy giving preference to internal applicants seeking promotions over applicants seeking lateral transfers, the agency, nevertheless, was entitled to summary judgment because plaintiff could not demonstrate that the agency's second explanation - - that the selectee was more qualified - - was pretextual).[3]

To establish pretext, Plaintiff argues that Defendant made "employment decisions" regarding Plaintiff several months after she filed two grievances. See Opposition at 38. She also argues that "the fact that two others were reassigned . . . [does not] undercut an inference of retaliation . . ." See id. at 38-39. Under Plaintiff's theory, an employer should never make any legitimate, business employment decisions regarding employees who file complaints for fear that it will be construed as discrimination or retaliation. Further, in this case, Plaintiff apparently wants the Court to infer that Ms. Baird-Bridges reassigned Mr. Sanabria, Ms. Keller, and

---

[3] See also Jaramillo v. Colorado Judicial Dept., 427 F.3d 1303, 1309 (10th Cir. 2005) (en banc) ("The fact that one of the [employer]'s explanations turned out to be incorrect does not necessarily create a genuine issue of fact concerning pretext."; plaintiff could only refute one of two reasons proffered by employer); Tyler v. RE/MAX Mt. States, Inc., 232 F.3d 808, 814 (10th Cir.2000) ("[A]s a general rule, an employee must proffer evidence that shows each of the employer's justifications are pretextual."); Russell v. Acme-Evans Co., 51 F.3d 64, 69 (7th Cir.1995) (debunking one explanation defeats summary judgment only if the company has offered no other reason that, standing alone, would have caused the company to take the action at issue); Combs v. Plantation Patterns, 106 F.3d 1519, 1539 (11th Cir.1997) (plaintiff must discredit "each" proffered explanation; employer entitled to judgment because plaintiff could discredit only two of three explanations);see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (judgment for employer mandatory if "the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision").

Plaintiff at the same time to disguise her "true" motives, to discriminate and retaliate against Plaintiff. This argument strains credulity and, in any event, has no basis in fact.

In addition, Plaintiff argues that "the Government proffers no legitimate justification for management's frustration of Ms. Sewell's efforts to seek training and the subsequent threat of termination on June 10, 2005." See Opposition at 38. First, Plaintiff appears to be attacking Defendant's actions, rather than Defendant's legitimate explanations for taking those actions. In any event, Plaintiff proffers no evidence that Defendant ever prevented Plaintiff from meeting with Mr. Sanabria, who sat two rows away from her, so that she could learn how to complete the Space Rent Report. Considering the nature and type of assignments Plaintiff was already performing, see Pl. Response at ¶¶ 5-11, and that she had proved herself very capable in the past, see Plaintiff's Response at ¶ 27, it was hardly illegitimate to expect her to meet with a colleague to learn how to complete one report. In fact, Plaintiff admits that on only *one* occasion, June 13, 2005, training for the Space Rent Report was cancelled and rescheduled. See Plaintiff's Response at ¶ 50. Lastly, as to the "threat of termination," it was Ms. Dunn's responsibility as chief of the Budget Branch to let Plaintiff know in advance that failure to complete an assignment would be considered insubordination and that further action may be taken. Plaintiff's fear of what *may* happen caused her to interpret Ms. Dunn's warning as a "threat of termination," to take sick leave, and to retire before any adverse employment action could be taken. See Plaintiff's Response at ¶¶ 35-38; Defendant's Response at ¶¶ 35-38.

Finally, with respect to Plaintiff's age discrimination claim, the decision-makers involved in this case are in Plaintiff's protected class. Plaintiff, Ms. Baird-Bridges (59 years old), and Ms. Dunn (45 years old) are all over forty years old. See Ex. 5 (Baird-Bridges Aff.) at ¶ 3; Ex. 6 (Dunn Aff.) at ¶ 3. In fact, Ms. Baird-Bridges is only five years younger than

Plaintiff.  See id.  This fact cuts against any inference of discrimination.  Their respective ages

suggest that Plaintiff needs more than just allegations to establish a prima facie case.  See

Walker v. Dalton, 94 F. Supp. 2d 8, 16 (D.D.C. 2000) (finding no inference of pretext where one

of the three panel members who ranked the applicants was of the same protected class as

plaintiff); see also Horvath v. Thompson, 329 F. Supp. 2d 1, 5 (D.D.C.2004) (harder to establish

gender discrimination when selecting official same gender as plaintiff).

      Finally, even assuming Plaintiff establishes a *prima facie* case of retaliation, she fails to

adduce evidence that Defendant's legitimate, non-discriminatory and non-retaliatory reasons for

assigning two new duties, not providing formal training, and reassigning her to the Budget

Branch are pretextual.   Here, the alleged retaliatory acts are the same as the alleged

discriminatory acts.  As explained in this Reply and the Opening Brief, Plaintiff has failed to

offer any persuasive, competent evidence that these business decisions were the result of her age

or prior protected activity.  As set forth in Defendant's Opening Brief, Defendant had legitimate,

non-discriminatory reasons for its decisions.  Plaintiff has failed to show that these reasons are

pretext for discrimination or retaliation and, therefore, summary judgment is appropriate in

Defendant's favor.

## IV.    CONCLUSION

      For the foregoing reasons, Defendant respectfully requests that the Court grant summary

judgment in its favor on all of Plaintiff's claims.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____/s/_____
KAREN L. MELNIK, DC Bar #436452
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0338